UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NIEBLER, PYZYK, KLAVER AND
WAGNER, LLP and JOHN H. NIEBLER,

    Plaintiffs,

    v.    Case No. 04-C-1029

TIG INSURANCE COMPANY,

    Defendant and Counterclaim Plaintiff,

    v.

HAROLD C. LANE, JR.,

    Third-Party Counterclaim Defendant.

**ORDER RE: TIG INSURANCE COMPANY'S PRIVILEGE CLAIMS**

On August 4, 2005, a hearing was conducted regarding Third-Party Counterclaim Defendant Harold C. Lane, Jr.'s ("Lane") motion for discovery sanctions as against TIG Insurance Company ("TIG"). At the conclusion of that hearing the court issued an order requiring *inter alia* the following: (1) on or before August 18, 2005, TIG produce all non-privileged documents relating to notice of claim not yet produced in response to Lane's written discovery requests; (2) on or before August 18, 2005, TIG file with the court its privilege log relating to notice of claim documents, and file under seal copies of the documents withheld from production (except communications with coverage counsel claimed to be attorney-client privileged), and file and serve on all other parties a memorandum of law explaining the basis for withholding such documents from production; and (3) on or before August 29, 2005, Lane file and serve his response to TIG's memorandum regarding

privileged documents.

In accordance with the court's order, TIG filed a memorandum of law in support of its privilege claims, a "Notice of Claim" privilege log (identifying six documents) and, under seal, a copy of documents numbered 1, 2, 4, and 5. Documents numbered 3 and 6 are claimed to be attorney-client correspondence and therefore, in accordance with the court's order following the August 4th hearing, were not provided to the court. On August 29, 2005, Lane filed his brief in opposition to TIG's privilege claims. The court has now reviewed those documents which were filed under seal. The court has also considered the submissions of the parties regarding TIG's claimed entitlement to withhold such documents (as well as to withhold documents numbered 3 and 6).

Before ruling on TIG's claims of privilege, it is appropriate to lay out a few applicable legal principles relating to the work product and attorney-client privileges. In diversity cases, federal law is applied to resolve work product claims and state law is applied to resolve attorney-client privilege claims. *Baker v. General Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir. 2000); *Pyramid Controls, Inc. v. Siemens Indus. Automations, Inc.*, 176 F.R.D. 269, 276 (N.D. Ill. 1997).

The federal work product privilege is set out in Fed. R. Civ. P. 26(b)(3), which provides in pertinent part, that

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering the discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

In other words, a conditional privilege is extended to documents and tangible things prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative, with such materials only being discoverable upon the requisite showing of substantial need and inability to obtain the materials without substantial hardship. However, there is an absolute privilege (or at least nearly absolute) of non-disclosure if the materials sought are comprised of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party. *Byrne v. Bd. of Educ., Sch. Dist. of West Allis-West Milwaukee*, 741 F. Supp. 167, 171 (E.D. Wis. 1990). Moreover, the work product privilege "extends to documents prepared in anticipation of any litigation, not just the instant litigation." *United States v. Capitol Serv., Inc.,* 89 F.R.D. 578, 585 (E.D. Wis. 1981).

The party asserting the work product privilege has the burden of demonstrating that the subject documentary materials are work product. *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976 (7th Cir. 1996); *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466 (S.D.N.Y. 2003). The party seeking the opponent's work product has the burden of showing the necessity of obtaining the work product. *Logan*, 96 F.3d at 976; *Pippenger v. Gruppe*, 883 F. Supp. 1201 (S.D. Ind. 1994).

However, "the mere fact that litigation does eventually ensue does not, by itself, cloak materials . . . with the work product privilege; the privilege is not that broad. Rather, we look to whether in light of the factual context the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Logan*, 96 F.3d at 976-77 (internal quotation marks and citations omitted). Furthermore, "[w]hile much of the paperwork generated by insurance companies is prepared with an eye toward a possible legal dispute over a claim, it is important to

3

distinguish between 'an investigative report developed in the ordinary course of business' as a precaution for the 'remote prospect of litigation' and materials prepared because 'some articulable claim, likely to lead to litigation . . . ha[s] arisen.'" *Id*. at 977 (quoting *Binks Mfg. Co. v. Nat'l Presto Ind., Inc.*, 709 F.2d 1109, 1120 (7th Cir. 1983)).

As to attorney-client privilege, as stated above, because in the case at bar jurisdiction is based on diversity, the substantive law of the state of Wisconsin is to be applied. In that connection, Wis. Stat. § 905.03(2) provides as follows:

> (2) GENERAL RULE OF PRIVILEGE. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client: between the client or the client's representative and the client's lawyer or the lawyer's representative ; or between the client's lawyer and the lawyer's representative; or by the client or the client's lawyer to a lawyer representing another in a matter of common interest; or between representatives of the client or between the client and a representative of the client; or between lawyers representing the client.

In turn, Wis. Stat § 905.03(1)(d) defines that which is a confidential communication:

> (d) A communication is "confidential" if not intended to be disclosed to 3rd persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.

In *State ex rel. Dudek v. Circuit Court*, 34 Wis.2d 559, 150 N.W. 2d 387 (Wisc. 1967) the court held that "once the professional relationship is established, all communications, oral and written, between attorney and client are privileged from production excluding those exceptions outlined in the statute." *Dudek*, 34 Wis. 2d at 580. "The policy underlying this privilege is to ensure full disclosure by clients who feel safe confiding in their attorney." *Lane v. Sharp Packaging Sys., Inc.*, 251 Wis. 2d 68, 90, 640 N.W. 2d 788, 798 (Wis. 2002). Nevertheless, because the lawyer-client

4

privilege is "'an obstacle to the investigation of the truth' it should be 'strictly confined within the narrowest possible limits consistent with the logic of the principle.'" *Lane*, 251 Wis. 2d at 90 (quoting *Jax v. Jax*, 73 Wis. 2d 572, 579, 243 N.W. 2d 831, 836 (Wis. 1976)). Finally, "[w]hile the lawyer-client privilege readily protects statements from the client to the lawyer, the privilege only protects communications from the lawyer to the client if 'disclosure of the lawyer-to-client communications would directly or indirectly reveal the substance of the client's confidential communications to the lawyer.'" *Lane*, 251 Wis. 2d at 104 (quoting *Journal/Sentinel v. Sch. Dist. of Shorewood*, 186 Wis. 2d 443, 460, 521 N.W. 2d 165, 172 (Wis. Ct. App. 1994)).[1]

Bearing the foregoing in mind, the court's rulings with respect to TIG's claims of privilege are as follows.

**1. Document No. 1 (Bates No. 00319; handwritten notes of Jim Kenny with respect to September 1, 2000 telephone discussion with supervisor Wendy Carroll regarding assessment of "prior notice" coverage defense).**

Court's Ruling: TIG's claim of work product privilege is *overruled*. The court is not persuaded that the document was prepared in anticipation of litigation. TIG has not shown that Document No. 1 was created in anticipation of litigation rather than simply as part of the ordinary business of evaluating the merit of a claim. Indeed, the document was created in September of 2000, three years before coverage litigation was initiated or coverage counsel was hired, and less than a year after the underlying state court proceedings were commenced. TIG is ordered to produce Document No. 1 to Lane.

---

[1] Indeed, in *Lane* the court held that the attorney billing records which were being sought contained detailed descriptions of the nature of the legal services rendered to the client. Such being the case, producing them would reveal the substance of lawyer-client communications between the client and its lawyer. Thus, the court concluded that the attorney billing records were protected by the attorney-client privilege.

**2. Document No. 2 (no Bates number; January 13, 2004 liability assessment report of TIG claim representative Doug Henderson evaluating potential coverage).**

Court's Ruling: TIG's claim of work product privilege is *sustained*. The court is persuaded that the document was created in anticipation of litigation. According to TIG's memorandum, Document No. 2 was created after TIG had retained counsel to prosecute coverage litigation and just two months before TIG did in fact commence an action seeking declaratory judgment regarding its coverage obligations. Again, although the timing is not dispositive, it tends to show that the document was created in anticipation of the litigation commenced shortly thereafter rather than in the ordinary business of evaluating the merit of claims. Furthermore, the document contains the mental impressions, conclusions, opinions and legal theories of a representative of TIG concerning the anticipated litigation. Moreover, to the extent that the document contains materials that are not the mental impressions, conclusions, opinions or legal theories of a representative of TIG concerning anticipated litigation (i.e., the document recounts the current status of the underlying state court proceedings), the court is neither persuaded that Lane has substantial need of such materials in the preparation of its case nor that Lane is unable without undue hardship to obtain the substantial equivalent of the materials by other means. Thus, TIG will not be ordered to produce Document No. 2.

**3. Document No. 3 (no Bates number; May 10, 2004 correspondence of TIG coverage counsel Attorney Michelle Bracke to TIG claims representative Doug Henderson).**

Court's Ruling: The court is not in a position to rule on TIG's claim that Document No. 3 is protected from disclosure by the attorney-client privilege and/or the work product privilege. This is because Document No. 3 has not been provided to the court. Consequently, TIG will be ordered to provide to the court Document No. 3 so that an informed assessment might be made with respect

6

Case 2:04-cv-01029-WEC   Filed 09/14/05   Page 6 of 8   Document 80

to the applicability of either, or both, of the foregoing privileges to Document No. 3.

**4. Document No. 4 (no Bates number; July 6, 2004 confidential mediation statement of Attorney Michelle Bracke to mediator Gary Gerlach).**

Court's Ruling: TIG's claim of privilege is *sustained*. Not only does the document contain the mental impressions, conclusions, opinions, and legal theories of TIG's attorney concerning ongoing litigation, but to order production of such a document, which was prepared exclusively for use in a mediation would have a profoundly chilling effect on the willingness of litigants (including perhaps these same litigants) to participate in mediation in the future. TIG will not be ordered to produce Document No. 4.

**5. Document No. 5 (no Bates number; October 8, 2004 liability assessment of TIG claim representative Doug Henderson assessing potential coverage defenses in context of ongoing of coverage litigation).**

Court's Ruling: TIG's claim of work product privilege is *sustained*. The court is persuaded that the document was created in anticipation of litigation. Document No. 5 contains much of the same information that document No. 2 contains, i.e., mental impressions, conclusions, opinions and legal theories of a representative of TIG concerning the litigation, and was created after coverage litigation had already commenced. To the extent that the document contains materials that are not the mental impressions, conclusions, opinions or legal theories of a representative of TIG concerning anticipated litigation, the court is neither persuaded that Lane has substantial need of such materials in the preparation of its case nor that Lane is unable without undue hardship to obtain the substantial equivalent of the materials by other means. Thus, TIG will not be ordered to produce Document No. 5.

**6. Document No. 6 (no Bates number; February 3, 2005 correspondence of TIG coverage counsel Attorneys Michelle Backe and Jeffrey Goldwater to TIG claims representatives Mark Rapponotti and Pete Slavin).**

Court's Ruling: The court is not in a position to rule on TIG's claim that Document No. 6 is protected from disclosure by the attorney-client privilege and/or the work product privilege. This is because Document No. 6 has not been provided to the court. Consequently, TIG will be ordered to provide to the court Document No. 6 so that an informed assessment might be made with respect to the applicability of either, or both, of the foregoing privileges to Document No. 6.

**NOW THEREFORE IT IS ORDERED** that TIG's objection to the production of Document No. 1 be and hereby is overruled and, therefore, within five (5) days of the date of this order TIG shall provide to counsel for Lane a copy of Document No. 1;

**IT IS FURTHER ORDERED** that within five (5) days of the date of this order TIG provide to this court, under seal, a copy of documents number 3 and 6;

**IT IS FURTHER ORDERED** that TIG's objections to the production of documents number 2, 4, and 5 are sustained and, therefore, TIG need not provide a copy of such documents to counsel for Lane.

**SO ORDERED** this 14th day of September 2005, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge